UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RACHEL ZITTOUN, : | |
|     Plaintiff, : | |
| : | |
| v. : | NO.  3:08cv1139 |
| : | |
| RATNER COMPANIES, LLC d/b/a : | |
| HAIR CUTTERY OF BOSTON LLC, : | |
| and NANCY CARRASQUILLO, : | |
|     Defendants. : | |

## RULING AND ORDER

    Currently pending before the court is a Motion to Dismiss [doc. # 34] Count Two of the Amended Complaint [doc. # 33 ], which alleges a claim for negligent infliction of emotional distress against Plaintiff Rachel Zittoun's former supervisor, Defendant Nancy Carrasquillo.  Count One of the Amended Complaint, which is not the subject of the motion to dismiss, asserts a claim under Conn. Gen. Stat. § 46-60(a)(1) ("CFEPA") for age discrimination and harassment against Ms. Zittoun's former employer, Ratner Companies LLC d/b/a Hair Cuttery of Boston LLC ("Ratner").  Ms. Carrasquillo previously moved to dismiss the same count from the original complaint.  *See* Motion to Dismiss [doc. # 19].  The Court denied the motion to dismiss without prejudice to renewal in order to give Ms. Zittoun one final opportunity to plead sufficient facts to address the defects raised by Ms. Carrasquillo in her original motion to dismiss.  *See* Order [doc. # 30].  Following the filing of the Amended Complaint [doc. # 33], Ms. Carrasquillo renewed her motion to dismiss.

    This Court has previously discussed at length the standard governing motions under Rule 12(b)(6).  *See, e.g., Beary v. ING Life Ins. & Annuity Co.*, 520 F. Supp. 2d 356, 361 (D. Conn. 2007).  Suffice it to say that in considering a motion to dismiss under Rule 12(b)(6), the Court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving

party." *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591-92 (2d Cir. 2007) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)); *see also Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (alteration and quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47,(1957))). That said, a plaintiff's pleading obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1965.

In her Amended Complaint, Ms. Zittoun alleges that she was constructively discharged as a result of alleged intolerable working conditions that Ms. Carrasquillo imposed during the period February to May 2006. *See* Amended Complaint [doc. #33] ¶¶ 11-22. In particular, the Amended Complaint asserts that Ms. Carrasquillo repeatedly complained about her age and called her a "pathetic, old woman," constantly asked Ms. Zittoun why she did not retire, yelled at Ms. Zittoun on several occasions and repeatedly criticized her in front of customers and coworkers, routinely blamed Ms. Zittoun for the computers being down, incorrectly informed management that Ms. Zittoun was tape recording conversations, "snapped at her inappropriately," and harassed and discriminated against Ms. Zittoun on the basis of her age. *Id.* On one occasion, in February of 2007, Ms. Zittoun alleges that when Ms. Carrasquillo yelled at her, Ms. Zittoun had difficulty breathing and required the services of paramedics and oxygen. *Id.* ¶ 13. Ms. Zittoun claims that she left Ratner's place of business on May 12, 2007 after Ms. Carrasquillo snapped at her inappropriately and she never came back to work.

The Connecticut Appellate Court recently described the elements that a plaintiff must plead

to make out a claim for negligent infliction of emotional distress in the employment context:

> In general, to prevail on such a claim, a plaintiff must prove that the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress, the plaintiff's distress was foreseeable, the emotional distress was severe enough that it might result in illness or bodily harm, and, finally, that the defendant's conduct was the cause of the plaintiff's distress . . . . Such a claim in the employment context arises only where it is based upon unreasonable conduct of the defendant in the termination process rather than in an ongoing employment relationship. Finally, to prevail on a claim of negligent infliction of emotional distress arising in the employment setting, a plaintiff need not plead or prove that the discharge, itself, was wrongful, but only that the defendant's conduct in the termination process created an unreasonable risk of emotional distress.

*Olson v. Burlington-Bristol Health Dist.*, 87 Conn. App. 1, 5 (2005) (quotations marks and citations omitted).[1] As *Olson* makes clear, only conduct occurring in the process of termination can form the basis for recovery for negligent infliction of emotional distress in the employment context. *See also Perodeau v. City of Hartford*, 259 Conn. 729, 744 (2002); *Brunson v Bayer Corp.*, 237 F. Supp. 2d 192, 208 (D. Conn. 2002). Where, as here, a plaintiff alleges a constructive termination, courts consider only those incidents which occurred during the resignation process or thereafter. *See Presely v. Pepperidge Farms, Inc.*, 356 F. Supp. 2d 109, 140 (D. Conn. 2005); *Pecoraro v. New Haven Register*, 344 F. Supp. 2d 840, 846 (D. Conn. 2004); *Hoydic v. Genesco, Inc.*, No. AAN-CV-07-5003291S, 2008 WL 1914338, at *7 (Conn. Sup. Ct. Apr. 10, 2008); *Michaud v. Farmington Community Ins. Agency*, No. CV 01 0806951, 2002 WL 31415478, at *3 (Conn. Sup. Ct. Sept. 25, 2002). "Recovery for negligent infliction of emotional distress is limited to the termination process

---

[1] As the Connecticut Appellate court explained, "a pivotal difference between claims for emotional distress based on intentional conduct and those based on negligent conduct is that an essential component of an intentional infliction claim is that the defendant's alleged behavior must be extreme and outrageous. A claim based on the negligent infliction of emotional distress requires only that the actor's conduct be unreasonable and create an unreasonable risk of foreseeable emotional harm." *Olson*, 87 Conn. App. at 7.

3

itself, not conduct preceding that discharge, be it constructive or actual." *Antonopoulos v. Zitnay*, 360 F. Supp. 2d 420, 430 (D. Conn. 2005).

  Ms. Carrasquillo claims that Ms. Zittoun's Amended Complaint is insufficient because the conduct she alleges as occurring in connection with the termination process itself is not sufficiently unreasonable to plead a claim for negligent infliction of emotional distress. The Court agrees. The allegations of misconduct against Ms. Carrasquillo – which presumably would have created an unreasonable risk of emotional distress on Ms. Zittoun's part – occurred principally during the ongoing employment relationship. Ms. Carrasquillo may well have created an age-based hostile work environment for Ms. Zittoun and perhaps her conduct even led to a constructive discharge of Ms. Zittoun. Of course, Ms. Zittoun's CFEPA claim can adequately address any emotional stress claim that occurred during her ongoing employment relationship with Ratner.

  But Ms. Zittoun cannot rely (as she seeks to do) on conduct occurring during the ongoing employment relationship to support her negligent infliction of emotional distress claim. *See Pecoraro*, 344 F. Supp. 2d at 846-47. The reason *Perodeau* limited the negligent infliction cause of action in the employment context is because of the Supreme Court's concern that "the societal costs of allowing claims for negligent infliction of emotional distress in the context of ongoing employment are unacceptably high." *Id*. at 762. It would undermine *Perodeau* to allow a plaintiff to convert a hostile work environment claim into negligent infliction of emotional distress by the mere invocation of the concept of constructive discharge. *See Peredeau*, 259 Conn. at 762-63 (A person "may not be found liable for negligent infliction of emotional distress arising out of conduct occurring within an ongoing employment context . . . "). As the Connecticut Superior Court explained in *Michaud*:

4

> Conduct justifying the termination, or, on the other hand, compelling the resignation, is not itself the actual termination. Termination means the ending, not the conduct which causes the ending. When one analyzes the policy reasons underlying *Perodeau*, one sees that conduct taking place within the employment relationship, even if wrongful and providing the basis for the claim of unlawful discharge, cannot provide the factual predicate for the emotional distress claim. If the actual termination is conducted wrongfully, then the action may lie. If the termination would be said to permeate the entire course of employment, then the reasoning of *Perodeau* would be hollow indeed.

*Michaud*, 2002 WL 31415478, at *3; *accord Edwards v. New Opportunities Inc.*, No. 3:05CV1238 (JCH), 2007 WL 947996, at * 6 (D. Conn. Mar. 26, 2007).

To summarize, a plaintiff may surely pursue a negligent infliction of emotional distress claim in the context of a constructive discharge. However, the conduct giving rise to that claim must arise in connection with the employee's actual resignation or discharge, or at a minimum, close in time to those events; the cause of action may not encompass the entire course of conduct during the ongoing employment relationship that also supports the employee's hostile work environment or constructive discharge claims.

When the Amended Complaint is viewed in this light, it is deficient. The only claim of misconduct close in time to Ms. Zittoun's leaving her employment with Ratner is that Ms. Carrasquillo "snapped at her inappropriately" on May 12 when she sought computer training, and that when Ms. Zittoun called to set up a schedule to return to work, Ms. Carrasquillo "told Ms. Zittoun in a demeaning way" that she, Ms. Carrasquillo, would not give Ms. Zittoun a work schedule and that she would have to address that issue with another employee. *See* Amended Complaint ¶¶ 20, 22. Whatever the conclusory labels "inappropriately" and "demeaning" may mean in this context, it is difficult in the extreme to see how a single instance of "snapping" at an employee as well as telling the employee she had to deal with someone else for a work schedule creates an

5

unreasonable risk of emotional distress.  *See, e.g., Antonopoulos,* 360 F. Supp. 2d at 425;  *Grey v. City of Norwalk Bd. Of Educ.*, 304 F. Supp. 2d 314, 333 (D. Conn. 2004);  *Michaud*, 2002 WL 31415478, at *3.  The other incidents that Ms. Zittoun cites, such as when Ms. Carrasquillo yelled at her and she required the services of paramedics and oxygen, occurred months before she left her employment with Ratner.

Therefore, the Court GRANTS Ms. Carrasquillo's Motion to Dismiss [doc. # 34] Count Two of the Amended Complaint.  Having already given Ms. Zittoun an opportunity to plead facts to support her claim, the Court directs the Clerk to terminate Ms. Carrasquillo as a Defendant.

IT IS SO ORDERED.


/s/     Mark R. Kravitz
       United States District Judge


**Dated at New Haven, Connecticut: January 12, 2009.**